STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Morris 7-Lot Subdivision | } | Docket No. 71-4-07 Vtec |
| (Appeal of Kelley) | } | |
| | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellants Evelyn Kennedy Kelley and the Evelyn Kennedy Kelley Trust appealed from a decision of the Planning Commission of the Town of Fayston, granting site plan approval to Appellee-Applicants Robin and Jennifer Morris (Applicants) for a seven-lot subdivision. Appellants are represented by John G. Hutton, Jr., Esq.; Appellee-Applicants are represented by Paul S. Gillies, Esq.

Applicants have moved for summary judgment on all questions[1] in Appellants' Statement of Questions. The following facts are undisputed[2] unless otherwise noted.

Applicants own a 130.5-acre parcel of hillside property, part of which is in the Rural Residential zoning district and part of which is in the Soil and Water Conservation zoning district. The terrain is steeply sloping, with heavily wooded areas containing large stands of beech trees that serve as a deer- and bear-wintering habitat. A recreational trail is also located on the property, available for use by the public.

The property essentially consists of two discrete sections, joined at a corner. The more westerly section is a rectangle of land at a higher elevation up the mountainside; it

---

[1] There is no question numbered 17.

[2] Questions 1 through 7, although posed as questions, are factual statements that more properly should have been placed in a statement of undisputed facts that is required by V.R.C.P. 56(c)(2) to accompany the motion and opposition.

1

lies completely in the Soil and Water Conservation zoning district and is not proposed for development. The more easterly section of the property is bounded on its east and north by Fayston Town Highway 21, also known as Old Center Fayston Road, or Armstrong Road.[3] The road is a Class 4 public highway in the location of the property; it has not been maintained by the town.

Access to the property from Vermont Route 100 in Waitsfield is over Old County Road (Waitsfield Town Highway 14) to Old Center Fayston Road, in a westerly and northerly direction.[4] Old Center Fayston Road enters the Town of Fayston at Appellants' property, and continues as a Class 4 "unimproved" road past Appellee-Applicants' property towards the west-northwest, where it joins the gravel Class 3 Center Fayston Road (Fayston Town Highway 4).

The parties dispute the extent to which Old Center Fayston Road in its present condition can carry vehicular travel to the proposed subdivision roadway entrance. That disputed fact is not material to the present motions; the parties do not dispute that Applicants propose to upgrade the road sufficiently to provide access to the internal subdivision roadway.

Appellant Trust owns a 2.2-acre parcel of property on the east side of Old Center Fayston Road, part of which is located in Waitsfield (1.6 acres) and part in Fayston (0.8 acre), between the end of the currently-improved portion of Old Center Fayston Road and the access road to the proposed subdivision. Appellants' property is situated across the road from property unrelated to this appeal, at an elevation lower than that property and lower than the elevation of Applicants' property. Appellants' property is subject to existing water runoff and sedimentation problems.

---

[3] Question 5 of the Statement of Questions.

[4] Question 6 of the Statement of Questions.

Applicants propose to subdivide thirty-five acres in the easterly portion of the project property into seven residential building lots, each of which will consist of approximately four to five acres of development land (with smaller building envelopes). The remainder of both sections of the property, approximately ninety-five acres, is proposed to be restricted as conservation land. Although three of the proposed lots have frontage on Old Center Fayston Road, all seven lots are proposed to have access only from the proposed subdivision roadway, so that only one curb cut (for the subdivision roadway) is proposed onto Old Center Fayston Road.

Lot 1 is proposed to have an area of 4 acres; Lot 3 is proposed to have an area of 5.3 acres; Lot 6 is proposed to have an area of 5.1 acres; Lot 2 is proposed to have an area of 17.7 acres, approximately half of which is restricted as conservation land; Lot 4 is proposed to have an area of 10.1 acres, approximately half of which is restricted as conservation land; Lot 5 is proposed to have an area of 13.1 acres, approximately half of which is restricted as conservation land; and Lot 7 is proposed to have an area of 75.3 acres, including some conservation land within the easterly parcel as well as including the whole of the westerly parcel of conservation land.[5]

Each lot is proposed to be limited to a single-family, five-bedroom residence. Each lot is proposed to be served by an individual well and an individual septic system. Each septic system is located on the lot which it serves, except that the leach field for Lot 6 is located on Lot 7.[6] A fifty-foot vegetated buffer is proposed along the roadway and at the westerly boundary of the development land.

---

[5] Question 4 of the Statement of Questions.

[6] Question 4 of the Statement of Questions. The undated "Project Description" states that Lots 5 and 6 share a septic system; however, Sheet S-6 of the project plans, revised at the end of December of 2006 shows the leachfields for Lots 6 and 7 to be located on Lot 7.

The project that is the subject of this proceeding is described in the application for subdivision approval, consisting of plans dated July 10, 2006, with revision dates of October 12, 2006, November 2, 2006, and December 27, 2006, as attached to Appellee-Applicants' Exhibit 2.[7]  The 2004 Land Use Regulations and the 2006 Town Plan are the applicable[8] versions of those documents.

On April 8, 1996, the Fayston Selectboard had granted permission to Applicants to perform work on Old Center Fayston Road (also described as Class 4 Armstrong Road or Town Highway 21), for the purpose of ingress and egress to and from the project,[9] subject to conditions.  The 1996 approval was to be recorded in the town land records, and the terms of the approval were specified as running with the land and binding on "the parties hereto, their heirs, successors and assigns."  No appeal of the 1996 Selectboard action was taken to superior court.

Ten years later, on April 10, 2006, the Selectboard granted amendments to that approval, reducing the allowable grade of the road and increasing the minimum size of the proposed culverts, to conform to the 2004 amendments to the land use or zoning regulations.  No appeal of the 2006 Selectboard action was taken to superior court.  The approval is limited by its terms to the portion of Old Center Fayston Road that will be used to access the property.  On January 8, 2007, the Selectboard further amended its approval to recognize that the surveyed length of the road upgrade is 2,065 feet, and to establish a recreation trail within the Town's road right-of-way (which the Selectboard minutes characterized as a "50 foot right of way").  No appeal of the January 2007 Selectboard action to superior court has been brought to the attention of this court.

_____

[7]  Question 1 of the Statement of Questions.

[8]  Question 2 of the Statement of Questions.  The Plan has not been provided.

[9]  Question 7 of the Statement of Questions.

4

The Planning Commission approved the subdivision application[10] on March 6, 2007. The application is now before the Court in this appeal de novo.

Questions 1 through 7 of the Statement of Questions

As to the facts stated in Questions 1 through 7 of the Statement of Questions, summary judgment is granted as to those facts as stated above, corresponding with the text at each footnote above.

Questions 8, 11 and 18 of the Statement of Questions

Appellants' Question 8 asks whether the Fayston portion of Old Center Fayston Road affords "the minimum width of 50 feet required for an access road to a development," which Appellants characterize as being required by § 6.4(B)(1) of the Land Use Regulations.

The parties do not disagree that the width of Old Center Fayston Road has not been "otherwise recorded" and that therefore its presumed width is three rods, which is equal to 49½ feet.[11] 19 V.S.A. §§ 32 and 702. Section 6.4(A) establishes the applicability of the road standards found in the remaining subsections of § 6.4 (including § 6.4(B) governing road design). Section 6.4(A) states that: "[t]hese standards apply to all proposed public roads and to private roads serving three or more lots." (Emphasis added.) The proposed roadway within the subdivision must meet[12] the remaining subsections of § 6.4, because it

---

[10] Question 3 of the Statement of Questions.

[11] Although the three-rod width has been treated by the Supreme Court as the equivalent of fifty feet in at least one appeal. Morse v. Murphy, 157 Vt. 410, 411–12 (1991).

[12] Unless a requirement is waived by the Planning Commission, or this Court in a de novo appeal, pursuant to § 6.4(B)(1).

5

is proposed to serve seven lots; Applicants do not dispute this requirement.

The recognized canons of statutory construction are applicable to this appeal. In re: Kim Wong Notices of Violation, Docket Nos. 169-7-06 Vtec and 293-12-06 Vtec, slip op. at 2 (Vt. Envtl. Ct., Mar. 12, 2007). The court must give "effect to the whole and every part of the ordinance," In re Stowe Club Highlands, 164 Vt. 272, 279–80 (1995) (citation omitted), so that no language is surplusage, In re Dunnett, 172 Vt. 196, 199 (2001), and so that the construction does not produce an absurd result. Willard v. Parsons Hill Partnership, 2005 VT 69, ¶21, 178 Vt. 300, 308 (2005).

Appellants argue that not only the proposed subdivision roadway, but also the existing Old Center Fayston Road, must meet the minimum right-of-way width required by § 6.4(B)(1). However, the Old Center Fayston Road, regardless of its present condition, is an existing public road, not a proposed public road, and therefore is not required to meet the 50-foot right-of-way width. Indeed, a contrary interpretation would produce the absurd result that all proposed subdivisions served by three-rod roads would have to obtain an additional six-inch strip of right-of-way from the landowners adjoining those roads, as no private applicant would have the condemnation power otherwise to accomplish that result.

Rather, reading the Land Use Regulations as a whole, §6.4 requires that applicants only have the obligation to create fifty-foot-wide rights-of-way over underlying land that they own, whether the right-of-way will be used for new proposed public roads or for internal subdivision roads that may remain private. This requirement ensures that, especially if the town might be asked to take such roads over in the future, such roads would be constructed to adequate standards. The fact that the Applicants were granted the right to upgrade the conditions of the existing public road does not convert it to a proposed public road, as it is already existing.

Accordingly, Appellee-Applicants' Motion for Summary Judgment as to Question

6

8 is GRANTED.

Question 11 asks whether the project, if constructed as shown and described in the documents submitted, will comply with §6.4(B) of the Land Use Regulations, which establishes road design standards. Applicants have presented evidence in an affidavit from the project engineer, with attached detailed site plans, demonstrating that the subdivision roadway complies with all the standards in §6.4(B), and also that the improvements to Old Center Fayston Road will meet those design standards[13] (other than as to the issue of the right-of-way width for Old Center Fayston Road dealt with in Question 8). Question 18 asks whether the permit should be denied due to lack of compliance with the right-of-way width or design standards.

When both parties move for summary judgment, each motion for summary judgment is to be analyzed giving the nonmoving party the benefit of all reasonable doubts and inferences. Alpine Haven Property Owners Ass'n, Inc. v. Deptula, 175 Vt. 559, 561, 2003 VT 51, ¶8. In responding to a motion for summary judgment supported by affidavits and other evidentiary material, the nonmoving party "may not rest upon the mere allegations or denials in its pleadings." White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28 (1999). Rather, V.R.C.P. 56(e) requires that the opposing party must set forth specific facts showing a genuine issue for trial. Dillon v. Champion Jogbra, Inc., 175 Vt. 1, 2–3 (2002). Those facts must be supported by affidavits or other evidentiary material. Morway v. Trombly, 173 Vt. 266, 270 (2001). It is not sufficient for the opposing party to rely on "conclusory allegations or mere conjecture." Mello v. Cohen, 168 Vt. 639, 641 (1998). "[M]ere allegations of counsel unsupported by documented evidence are not enough to

---

[13] While no request for a waiver was before the Planning Commission or is before the Court, § 6.1(B) does allow the Planning Commission to waive or vary subdivision review standards, subject to appropriate conditions, in the context of § 7.1(E).

create a genuine issue of material fact" sufficient to preclude summary judgment. Progressive Ins. Co. v. Wasoka, 178 Vt. 337, 349, 2005 VT 76, ¶25.

Accordingly, summary judgment on Questions 11 and 18 also will be granted in favor of Applicants, at a telephone motion hearing scheduled in the final paragraph of this decision, unless at that hearing Appellants come forward with evidence to show that disputed material facts remain for trial on these questions.

Question 9 of the Statement of Questions

Question 9 of the Statement of Questions asks whether the Selectboard's grants of approval for improvement of the road grants "rights" that are "perpetual and irrevocable." Appellee-Applicants argue that, because the three Selectboard decisions were not appealed and because the approval has no termination date, their rights to upgrade the road are perpetual and irrevocable. However, neither party has shown any section of the Land Use Regulations that requires that a developer must have a right, rather than a mere authorization or license, to perform work on a public roadway, nor that such an authorization must be perpetual or irrevocable. Without a reference to a section of the Land Use Regulations under which the duration of the Selectboard's grants of approval to upgrade the road comes within this Court's jurisdiction in this subdivision case, the Court would have no jurisdiction to determine this question.

Accordingly, Question 9 will be dismissed at the telephone motion hearing scheduled in the final paragraph of this decision, unless it is shown to be within the jurisdiction of this Court in this case.

Questions 10, 12 and 19 of the Statement of Questions

Appellants' Question 10 asks whether the proposed work on Old Center Fayston Road constitutes land development as defined in § 10.1 of the Land Use Regulations, and

if so, whether development of the road takes place on land having an a gradient in excess of 25% (and thus is subject to the prohibition in § 3.4(B) of the Regulations). Question 12 asks whether the project as a whole involves excavation, filling, and/or regrading of land with an average gradient in excess of 15%, subjecting it to the requirement of obtaining conditional use approval under § 3.4(A).

The Selectboard approval allows Appellee-Applicants to undertake the improvement of a Class 4 town road. That work may require conditional use or other zoning approval separate from the subdivision approval at issue in the present appeal; if so, such separate approval is not before the Court in this appeal. The 2006 Selectboard approval by its own terms requires that the maximum grade of the road be 15%; the minutes reflect that the limitation was imposed apparently to meet the changed zoning regulations.

With regard to the project property itself, the "existing conditions" sheet of the project plans shows the locations of the portions of the project with an average slope of more than 15%; Appellee-Applicants acknowledge that therefore the project will also require conditional use review under § 3.4(A). The affidavit of the project engineer states that all of the land development (as that term is defined in §10.2) is proposed for slope gradients under 25%, in compliance with §3.4(B).

Question 19 asks whether, if the requirements raised by Questions 10 or 12 must be met, the subdivision permit at issue in the present case should require compliance with those sections. In any event, the project must comply with all other applicable sections of the Land Use Regulations and must obtain all other required permits, regardless of whether such a condition is imposed in the final subdivision approval.

Therefore, as discussed above with regard to Questions 11 and 18, summary judgment on Questions 10, 12, and 19 will be granted in favor of Applicants at the telephone motion hearing scheduled in the final paragraph of this decision, unless at that

9

hearing Appellants come forward with evidence to show that disputed material facts remain for trial on these questions. If all the other issues are resolved by summary judgment, the parties should be prepared to discuss whether they wish to agree to the addition of a condition stating that the project must comply with all other applicable sections of the Land Use Regulations and must obtain all other required permits.

Questions 13, 14, 15, and 16 of the Statement of Questions

Questions 13 asks whether Appellants' property at present is "subject to water flows and particularly stormwater runoff, together with silt deposits and sedimentation, which substantially interfere with Appellants' use and enjoyment" of their property. Question 14 asks whether that stormwater and sedimentation is "due in large part to the level of the existing roadway in front of Appellants' premises having been raised by about 4 to 5 feet."

Appellee-Applicants do not dispute that Appellants' property may be subject to water problems from the land and driveway of the next neighbor closer to and above Appellants' property, or to runoff from the Class 3 portion of the road (rather than the portion of the road proposed for upgrading in connection with the project). Appellee-Applicants have submitted the project engineer's affidavit to the effect that the stormwater design for the project and for the roadway, including a replacement culvert, ditching, and a stormwater retention pond, will reduce the runoff and siltation from the town highway above Appellants' property.

The issue of whether certain existing conditions of Appellants' property interfere with Appellants' use and enjoyment of that property may relate to any property or nuisance cause of action Appellants may claim due to the existing runoff, but such claims are not within the jurisdiction of the Environmental Court. Rather, this Court must analyze whether the project as proposed will meet the sections of the Land Use Regulations applicable to subdivision approval. As stated, neither Question 13 nor Question 14 appears

10

to relate to any standards for subdivision approval in the Land Use Regulations and therefore they appear to be beyond the jurisdiction of this Court.

Accordingly, Questions 13 and 14 will be dismissed at the telephone motion hearing scheduled in the final paragraph of this decision, unless they are shown to be within the jurisdiction of this Court in this case.

Question 15 asks whether the proposal to improve Old Center Fayston Road will result in significantly and unreasonably increased flows of storm water and sedimentation onto Appellants' property. Question 16 asks whether, in light of the current problems and the possible effects from the proposed project, additional provisions should be included in the approved permit under § 16.5 of the Land Use Regulations to prevent such adverse effects.

This Court does have jurisdiction to determine whether the proposed subdivision plans will meet the provisions of the Land Use Regulations with regard to stormwater, drainage and erosion. Appellee-Applicants do not dispute that the proposal must also qualify for conditional use approval on this issue under § 5.4(B)(5), as well as obtaining a state stormwater permit and an Act 250 permit addressing these issues. As in the discussions of the previous groups of questions, Appellee-Applicants have supported their motion for summary judgment on the issue of stormwater runoff and sedimentation with the affidavit of the project engineer, supported by the project plans and calculations, that the project as proposed will not result in erosion or increased runoff problems onto Appellants' property. Appellants have not supported their opposition on these question with affidavits or documented evidence to show that there is a genuine issue of fact for trial on Questions 15 or 16.

Therefore, as discussed above with regard to Questions 10, 11, 12, 18, and 19, summary judgment on Questions 15 and 16 will be granted in favor of Applicants at the telephone motion hearing scheduled in the final paragraph of this decision, unless at that

11

hearing Appellants come forward with evidence to show that disputed material facts remain for trial on these questions.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED as follows: summary judgment is GRANTED as to the facts stated in Questions 1 through 7 of the Statement of Questions, as stated above; summary judgment is GRANTED in favor of Appellee-Applicants as to Question 8 of the Statement of Questions; and the remaining questions in the Statement of Questions, as discussed above, will be addressed on the record of the telephone motion hearing scheduled for December 3, 2007, at a time stated in the enclosed notice of hearing.

Done at Berlin, Vermont, this 26th day of November, 2007.

_____
Merideth Wright
Environmental Judge